IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

HOOVER BROTHERS FARMS, INC.,
a Missouri corporation                                                    PLAINTIFF

V.                    CASE NO. 3:17-CV-03025

WAL-MART STORES, INC.,
a Delaware corporation                                                    DEFENDANT

## MEMORANDUM OPINION AND ORDER

Currently before the Court are ripe cross-motions for summary judgment. Plaintiff Hoover Brothers Farms, Inc. ("Hoover") filed its Motion for Summary Judgment (Doc. 29), Brief in Support (Doc. 30), and Statement of Facts (Doc. 31) on November 15, 2017. Defendant Wal-Mart Stores, Inc. ("Walmart") filed a Response to the Motion (Doc. 35), Response to Statement of Facts (Doc. 36), and Brief in Support (Doc. 37) on December 6, 2017. Thereafter, on December 20, 2017, Hoover filed a Response to Defendant's Statement of Facts (Doc. 38). About a month later, Walmart filed a Cross-Motion for Summary Judgment (Doc. 40), accompanied by a Statement of Facts (Doc. 41) and Brief in Support (Doc. 42). On February 12, 2018, Hoover filed a Response to Walmart's Statement of Facts (Doc. 45) and a Brief in Support (Doc. 46). Then on February 20, 2018, Walmart filed a Reply to the Response (Doc. 47).

In reviewing the parties' submissions, they agree on all the underlying facts that are material to deciding this contract dispute, but they disagree about how the contractual provisions at issue should be interpreted as a matter of law. For the reasons explained below, Hoover's Motion for Summary Judgment (Doc. 29) is **GRANTED**, and Walmart's Cross-Motion for Summary Judgment (Doc. 40) is **DENIED**.

# I. BACKGROUND

The Amended Complaint (Doc. 9) asserts a single cause of action for declaratory judgment. Hoover asks the Court to declare the rights of the parties with respect to an agreement (Doc. 9-1) it entered into with Walmart on June 28, 2001 (the "Agreement"). Walmart admits that it drafted the Agreement. See Doc. 31 at 1. It concerns certain easements, covenants, and restrictions affecting two pieces of real property in Mountain Home, Arkansas, described as Tracts 1 and 2. Tract 1 is currently owned by a Walmart affiliate and contains a Walmart store and parking lot, and Tract 2 is adjacent to and east of Tract 1 and is currently owned by Hoover. Tract 2 contains various buildings and a parking lot. The 2001 Agreement envisions that Walmart's Tract 1 and Hoover's Tract 2 will be "developed in conjunction with each other pursuant to a general plan of improvement to form a commercial shopping center . . . ." (Doc. 9-1, p. 2). The contract refers to Tracts 1 and 2 in combination as the "Shopping Center." Id. A diagram is attached to the Agreement as Exhibit A, id. at 17, and it labels Tracts 1 and 2.

> In paragraph 3 of the Agreement, Hoover makes the following promises:
>
> 3. <u>Competing Business</u>. Developer [Hoover] covenants that as long as Wal-Mart or any affiliate of Wal-Mart is either owner or lessee of Tract 1, no space in or portion of Tract 2, and no space in or portion of any other real property adjacent to the Shopping Center which may subsequently be acquired by Developer, shall be leased or occupied by or conveyed to any other party for the following uses:
>
> (1) A general merchandise discount store or a wholesale membership/warehouse club; or
>
> (2) a discount drug store selling prescription drugs required to be dispensed by a licensed pharmacist; or

> (3) a retail or discount grocery store devoted to selling food or grocery items, specifically including, but not limited to, the wholesale or retail sale of dairy products, bakery goods, meat, poultry, fish, frozen goods, produce, and shelf grocery items.

(Doc. 9-1, p. 3).

In paragraph 11 of the Agreement, the parties contemplate the future expansion of the Shopping Center, as follows:

> 11. <u>Shopping Center Expansion</u>. The parties agree that in the event the Shopping Center is expanded by ownership, control of the parties or agreement with a third party, all of the provisions of this Agreement shall apply to the expanded area and the parking to the building ratio in the expanded area shall not be less than that provided in Paragraph 6a(2).

*Id.* at 12.[1]

The parties' Agreement continued for approximately the next 15 years, seemingly without incident, until a discount grocery store chain called Aldi Grocery Store ("Aldi") approached Hoover about acquiring a piece of real property located south of Tract 2—which Hoover had purchased on June 2, 2000, about a year before it entered into the Agreement with Walmart. This so-called "South Lot" is adjacent to Walmart's commercial Shopping Center. It appears Hoover held off on selling or leasing the South Lot to Aldi because Walmart expressed concern that doing so would violate one or more of the provisions of their Agreement, particularly the Competing Business restriction at

---

[1] The Agreement was amended twice after it was first signed, but neither of the amendments modified paragraphs 3 or 11. The first amendment occurred on February 14, 2002, and modified only paragraph 2. *See* Doc. 31-7. The second amendment took place on February 17, 2003, and substituted the original Exhibit A, which was a diagram of Tracts 1 and 2, for a new Exhibit A, which is identical to the original diagram, except that it more specifically labels certain buildings in Tract 2. *See* Doc. 31-8. The second amendment also modified paragraph 4F. *See id.*

paragraph 3 and/or the Shopping Center Expansion clause at paragraph 11. Hoover filed this lawsuit so that the Court could resolve the dispute.

Hoover contends in its Motion for Summary Judgment that it should be permitted to sell or lease the South Lot as it sees fit. Hoover believes that neither the Competing Business restriction nor the Shopping Center Expansion clause applies to the South Lot. Walmart disagrees and argues in its Cross-Motion for Summary Judgment selling the South Lot to Aldi would directly violate the Competing Business restriction, or else implicate the Shopping Center Expansion clause (which, if applicable, would trigger the Competing Business restriction). Deciding the parties' rights as to the prospective disposition of the South Lot is a straightforward matter of contract interpretation.

## II. LEGAL STANDARD

A party moving for summary judgment must establish both the absence of a genuine dispute of material fact and its entitlement to judgment as a matter of law. See Fed. R. Civ. P. 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Nat'l Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999). The same standard applies where, as here, the parties have filed cross-motions for summary judgment. When there exists no genuine issue as to any material fact, "summary judgment is a useful tool whereby needless trials may be avoided, and it should not be withheld in an appropriate case." *United States v. Porter*, 581 F.2d 698, 703 (8th Cir. 1978). Each motion should be reviewed in its own right, however, with each side "entitled to the benefit of all inferences favorable to them which might reasonably be drawn from the record." *Wermager v. Cormorant Twp. Bd.*, 716

F.2d 1211, 1214 (8th Cir. 1983); see also Canada v. Union Elec. Co., 135 F.3d 1211, 1212-13 (8th Cir. 1998). In order for there to be a genuine issue of material fact, the non-moving party must produce evidence "such that a reasonable jury could return a verdict for the nonmoving party." Allison v. Flexway Trucking, Inc., 28 F.3d 64, 66 (8th Cir. 1994) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

## III. DISCUSSION

Both parties argue in their respective motions that the language in their Agreement is clear and unambiguous; however, they interpret the language in paragraphs 3 and 11 of the Agreement differently. The Court has reviewed paragraphs 3 and 11 and finds them to be clear and unambiguous as a matter of law. See Dunn v. Aamodt, 695 F.3d 797, 799 (8th Cir. 2012) ("The determination of whether ambiguity exists is ordinarily a question of law for courts to resolve." (quoting Magic Touch Corp. v. Hicks, 260 S.W.3d 322, 326 (Ark. Ct. App. 2007))).

Beginning with paragraph 3, the Competing Business restriction, the Court finds that it meets the definition of a restrictive covenant under Arkansas law. "A restrictive covenant is defined as a 'private agreement, usually in a deed or lease, that restricts the use or occupancy of real property, especially by specifying lot sizes, building lines, architectural styles, and the uses to which the property may be put.'" Hutchens v. Bella Vista Vill. Prop. Owners' Ass'n, 110 S.W.3d 325, 329 (Ark. Ct. App. 2003) (quoting Black's Law Dictionary 371 (7th ed. 1999)). In general, "[r]estrictive covenants are to be strictly construed against limitations on the free use of property, and all doubts are resolved in favor of the unfettered use of land." Id.

Walmart explains in its Brief in Support of its Cross-Motion for Summary Judgment that it entered into the Agreement with Hoover in 2001 primarily because it "did not want certain competing businesses to be located adjacent to the shopping center development, and Hoover agreed to this request." (Doc. 42, p. 2). But the plain language of the Competing Business restriction at paragraph 3 does not prohibit the development of competing businesses on all land owned by Hoover that is adjacent to the Shopping Center. Instead, this provision prohibits Hoover, as "Developer," from leasing or conveying to any other party any "space in or portion of Tract 2," and any "space in or portion of any other real property adjacent to the Shopping Center *which may subsequently be acquired by Developer* . . . ." (Doc. 9-1, p. 2). This means that the parties contemplated restrictions on Hoover's future use of Tract 2 and any property adjacent to the Shopping Center that Hoover might acquire in the future. The Agreement did not contemplate restricting Hoover's use of all of the real property it already owned at the time of the Agreement, simply because that real property happened to be located adjacent to or near the Shopping Center.

Walmart objects to this "narrow" reading of paragraph 3 and explains that the parties actually intended the Competing Business restriction to apply more expansively. According to Walmart, Hoover understood that *all* real property that it owned adjacent to the Shopping Center would be covered by the restriction, "including any property that '**may** subsequently be acquired . . . .'" (Doc. 42, p. 4 (emphasis in original)). But the problem with Walmart's interpretation is that the word "including" does not appear in paragraph 3, and the paragraph does not restrict Hoover's use of *all* adjacent property

6

that it owns. Instead, paragraph 3 *only* restricts the use of adjacent real property that Hoover "may subsequently . . .acquire[]" in the future. *See* Doc. 9-1, p. 3. Further, an expansive reading of the contract's terms was evidently *not* contemplated by the parties at the time they entered into the Agreement, as is evidenced by the "Entire Agreement" clause, which states:

> The parties do not rely upon any statement, promise, or representation not herein expressed, and this Agreement once executed and delivered shall not be modified or altered in any respect except by a writing executed and delivered in the same manner as required by this document.

*Id.* at 13.

Since Hoover acquired the South Lot about a year before the parties entered into their Agreement, the South Lot is not subject to the restrictive covenant in paragraph 3.[2] If Walmart had intended to restrict Hoover's ability to lease or sell *all* property adjacent to the Shopping Center through the restrictive covenant, Walmart—the drafter of the Agreement—could have included that language.

---

[2] Another indicator that the parties never contemplated the inclusion of the South Lot in their Agreement—apart from the plain language of the Agreement itself—may be found in the diagram of the Shopping Center that appears on the Agreement's last page. *See* Doc. 9-1, p. 17. The diagram depicts the real property that is the subject of the Agreement—Tracts 1 and 2. Certain buildings in Tract 2 are separately labeled in the original diagram, and in an amended version of the diagram, *see* Doc. 31-8, p. 7, still other "building areas" and "outparcels" located in Tract 2 are separately labeled. Tellingly, the South Lot does not appear in its entirety on the diagram, nor is it labeled at all. The only reason the Court was able to identify the South Lot on the diagram is because Walmart submitted an aerial photograph of the Shopping Center and the several parcels of land surrounding it, and then circled the South Lot on the photograph. *See* Doc. 47-1. The Court then compared the photograph to the diagram and was able to discern where the South Lot was located.

Walmart's alternative argument is that the contemplated sale or leasing of the South Lot to Aldi is covered by paragraph 11 of the Agreement, which is entitled "Shopping Center Expansion." That paragraph states that if "the Shopping Center is expanded by ownership, control of the parties or agreement with a third party," then all other provisions of the Agreement—including the restrictive covenant at paragraph 3—"shall apply." (Doc. 9-1, p. 12). The term "Shopping Center" is defined in the Agreement as "Tract 1 and Tract 2": the two parcels of real property that "Wal-Mart and Developer desire . . . be developed in conjunction with each other pursuant to a general plan of improvement . . . ." *Id.* at 2. Accordingly, any expansion of the "Shopping Center" under paragraph 11 would expand Tract 1 and/or Tract 2 "by ownership, control of the parties or agreement with a third party." *Id.* at 12. The Court finds that Hoover's contemplated sale of the South Lot to Aldi would not constitute an expansion of Tracts 1 and/or 2 and Walmart's Shopping Center, and thus, would not fall under paragraph 11. The South Lot is an entirely separate piece of property from either Tract 1 or Tract 2.

### IV. CONCLUSION

For the reasons explained above, **IT IS ORDERED** that Plaintiff Hoover Brothers Farms, Inc.'s Motion for Summary Judgment (Doc. 29) is **GRANTED**, and Defendant Wal-Mart Stores, Inc.'s Cross-Motion for Summary Judgment (Doc. 40) is **DENIED**. Judgment will enter contemporaneously with this Order.

**IT IS SO ORDERED** on this 2nd day of May, 2018.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE